[Civ. No. 1073.    Third Appellate District.—March 6, 1913.]

## JAMES YOUNG, Respondent, v. T. H. BENTON, Appellant.

NOVATION—ESSENTIAL REQUISITES—WHAT CONSTITUTES.—Novation implies four essential requisites: 1. A previous valid obligation; 2. The agreement of all the parties to the new contract; 3. The extinguishment of the old contract; and 4. The validity of the new one.

ID.—PROMISSORY NOTE OF CORPORATION.—When the holder of a promissory note against a corporation releases the corporation from liability on the assumption of the indebtedness by the assignee of the property of the corporation, the note is not, on the theory of a novation, the basis of the obligation but the measure of it.

ID.—UNCERTAINTY IN PLEADING—HARMLESS ERROR.—Error in overruling a demurrer to the complaint in an action to recover from the assignee the amount of such assumed indebtedness, on the ground of its uncertainty as to the theory upon which it was framed, is not

ground for a reversal after a full trial on the merits, if it is clear that the appellant has not been prejudiced thereby.

ID.—EVIDENCE TO SHOW ORIGINAL INDEBTEDNESS AND ITS ASSUMPTION.—The evidence is ample to show that the corporation was indebted to the plaintiff on the promissory note, that the note was one of the obligations which the defendant assumed, and that the plaintiff released the corporation from liability for such indebtedness and accepted the agreement of the defendant in place thereof.

ID.—CONSTRUCTION OF AGREEMENT—OBLIGATIONS INCLUDED.—Where the transferee of the property of the corporation agreed "to assume any and all valid existing obligations of the company as shown by its books and to discharge the corporation from liability thereon," his agreement covered a promissory note as shown in the book of minutes and in the book of bills and notes payable.

ID.—EVIDENCE—ADMISSIBILITY OF AGREEMENT.—The agreement contemplating the transfer of the corporation's property to the defendant and his assumption of the corporation's liabilities is admissible in evidence.

ID.—ADMISSION OF NOTE IN EVIDENCE—HARMLESS ERROR.—The defendant suffered no injury from the court refusing to state upon what ground and for what purpose it admitted the promissory note in evidence.

ID.—STATEMENTS OF PLAINTIFF—SELF SERVING DECLARATIONS—HEARSAY. A statement by the plaintiff, in the absence of the defendant, that he was satisfied with the contemplated arrangement and was willing to accept the defendant for the corporation's indebtedness, is admissible in evidence.

ID.—MOTION TO STRIKE OUT EVIDENCE—FAILURE TO RULE ON.—Error of the court in failing to rule on a motion to strike out such evidence was without prejudice to the defendant, as the ruling should have been adverse to him.

APPEAL from a judgment of the Superior Court of Shasta County.   J. E. Barber, Judge.

The facts are stated in the opinion of the court.

Bush & Hall, for Appellant.

Braynard & Kimball, for Respondent.

BURNETT, J.—The complaint is framed upon the theory of a novation.   It appears therein that, on the nineteenth day of December, 1904, the Redding and Big Bend Lumber Company, a corporation, having its principal place of busi-

ness in Redding, Shasta County, executed and delivered to plaintiff its promissory note for three thousand five hundred dollars, payable one year after date, with interest at nine per cent per annum; that, on April 24, 1908, the defendant agreed in writing with Herbert Bass, J. H. Buick, and M. Wengler, the owners of more than two-thirds of the capital stock of said corporation, providing, among other things, that the corporation was to transfer all its property of what ever kind to Benton and the latter ''to assume any and all valid and existing obligations and indebtedness of the company, as shown by its books, and to discharge the corporation from liability thereon''; that at the time of said agreement there was due plaintiff on said note, of the principal, the sum of two thousand five hundred dollars, and interest thereon from January 6, 1908; that this was a valid and existing obligation of the corporation to plaintiff and so shown by and from its books; that immediately after the execution of said agreement of April 24, plaintiff released and discharged said corporation from all liability growing out of said indebtedness and accepted the substitution and agreement of defendant in lieu thereof; that, on the fifteenth day of May, 1908, said corporation transferred and assigned all of its property to said Benton pursuant to its by-laws and said written agreement of April 24; that all the terms and conditions of said agreement, which were the consideration for the signature of said T. H. Benton thereto and for his written promise therein contained, were duly and fully performed and executed by all the parties thereto.

The foregoing facts are set forth in legal and appropriate phraseology and they manifestly constitute the essential elements of a novation as contemplated by the code (Civ. Code, sec. 1531, subd. 2) and the authorities.

Novation, strictly speaking, implies four essential requisites: 1. A previous valid obligation; 2. The agreement of all the parties to the new contract; 3. The extinguishment of the old contract; and 4. The validity of the new one. (29 Cyc. 1130.)

Plaintiff, indeed, going beyond the requirement of a good pleading for novation, alleged that he ''is now the lawful owner and holder of the said promissory note, made, executed and delivered to said plaintiff as aforesaid.''

This gave rise to a special demurrer on the ground "that it cannot be ascertained therefrom whether or not plaintiff is suing upon the liability alleged to have been incurred by reason of the promissory note set forth in said amended complaint, or upon a liability created by reason of any agreement made or entered into by the defendant with the plaintiff, or with the Redding and Big Bend Lumber Company."

Manifestly, upon the theory of a novation, the promissory note is not the basis of defendant's obligation. Said theory involves, as we have seen, an entirely new contract and the note is of significance only as the measure of that obligation.

The allegation in reference to the note in connection with the other averments of the complaint might be construed as the exemplification of the condition contemplated by section 1559 of the Civil Code providing for the enforcement of contracts made expressly for the benefit of third persons.

There is thus some plausibility in the claim of uncertainty as to the theory upon which the complaint was framed, but it is entirely clear that appellant was not misled nor prejudiced thereby; and if we assume that the ruling was erroneous as to the demurrer the case should not be reversed after a full trial upon its merits.

Indeed, appellant seemed to be in no uncertainty as to the grounds upon which the action was based for, during the trial, he stated: "Now, the only thing before the court under the issues raised by the pleadings in this case, is as to whether or not the Redding and Big Bend Lumber Company owed to the plaintiff, Young, a certain sum of money; if at a certain time T. H. Benton agreed to pay that particular amount; and, if, at that particular time, the plaintiff Young accepted Benton and released the Redding and Big Bend Lumber Company from their liability. Now these are the material points in a novation and they have been pleaded, and properly and fully pleaded, constituting a novation in this case."

And, it may be said that upon this theory the case was tried. It is true that plaintiff retained in his possession the note which he had received from the corporation, but his explanation of this circumstance obliterated any apparent inconsistency in his position.

In view of the record, it is rather strange that appellant should gravely and seriously question the sufficiency of the evidence to support certain material findings of the court. They are all amply supported, as a careful reading of the whole transcript has disclosed. Each is upheld by the testimony of more than one witness, while the documentary evidence as well as the testimony of several witnesses constitute the sure foundation for some of the challenged findings.

In consequence of the earnest contention of appellant, it seems advisable, however, at the risk of prolixity, to exhibit some of this evidence.

1. That the corporation was indebted to plaintiff on its promissory note there can be no kind of controversy. It purported to be the note of the corporation for three thousand five hundred dollars, properly signed by its president and attested by its secretary, dated December 19, 1904, and payable to the order of plaintiff and carrying the indorsements of one thousand dollars paid on account of the principal and of interest to January 1, 1908.

The check of plaintiff for three thousand five hundred dollars, dated on said December 19, 1904, payable to the Redding and Big Bend Lumber Company, with an indorsement thereon showing that the check was paid at Redding on December 20, 1904, was received in evidence.

The minutes of the corporation showed that a meeting of the board of directors was held December 19, 1904, and the following resolution was unanimously adopted: "Resolved that it is for the best interests of this corporation to negotiate a loan of three thousand five hundred dollars, paying not to exceed nine per cent interest thereon, and the president and secretary of this corporation are hereby directed to borrow such sum of money at not to exceed the rate of nine per cent interest, from James Young of Redding, Cal., and to make, execute and deliver to the said James Young the promissory note of this corporation therefor."

The book of notes and bills payable of the company disclosed a record of this note, together with an unpaid balance on another note in favor of James Young.

Herbert Bass, the president, Mathias Wengler, the secretary, and J. H. Buick, a director, of the corporation, each testified that the said note was executed by the company "in

accordance with and pursuant to the resolution adopted by them,'' and that the consideration therefor was received and used by the said corporation.

2. There is no less certainty that the evidence supports the conclusion that this was one of the obligations assumed by appellant.

His agreement was to pay ''any and all valid and existing obligations and indebtdness of the company as shown by its books, and to discharge the corporation from liability thereon.'' Herein, the only possible controversy is or can be as to whether this indebtedness was ''shown by the books.''

No particular book or books being designated, we must look to the books ordinarily kept by such corporations and in which are customarily recorded such transactions.

We have already observed the record in the book of minutes and of the notes and bills payable.

Mr. Wengler testified: ''I saw those entries in the ledger under Mr. Young's account. The entry showed the indebtedness by a note to Mr. Young, the $3,500.00. I saw that on the books of the Redding and Big Bend Lumber Company shortly before we made the deal, in 1906, and before Mr. Benton took charge. The books were afterward sent to Redding at the request of Mr. Benton.''

Winfred Wright, an expert bookkeeper, examined the books of the company in 1906 and, with reference to the three thousand five hundred dollar note, he testified: ''I found it entered upon the original book of entry, the old journal. I traced it to the ledger, checked it through to the ledger, whereupon I found entered upon the credit side of the ledger, on the credit side of Mr. Young's account, a $3,500.00 credit. I also traced this from the credit side of the ledger of Mr. Young's account to the depository account, charging the depository with $3,500.00. Then I found a further entry on this original journal of $3,500.00 charged to Mr. Young on a note account, with the proper explanations, and on note account, or bills payable, I found bills payable credited with $3,500.00 as against this entry, making the entry very clear in my mind.''

There is testimony of other witnesses to the same point and effect. Indeed, it is difficult to understand why it should be urged that this indebtedness was not shown by the books.

In explanation, it probably should be stated that the ledger referred to and probably some of the other books were destroyed and therefore secondary evidence, as to what was contained therein, was received.

The expert witness also declared that the books were not kept according to the most approved methods, and that a degree of obscurity existed as to some of the details of the transaction, but it is entirely clear that the indebtedness was sufficiently shown by "the books of the corporation."

It further appears that appellant had actual knowledge of this indebtedness, and it is a fair inference from the testimony that he knew this indebtedness was shown by the books of the corporation.

Mr. Bass testified that "Mr. Benton knew of this outstanding obligation, because he was paying the interest on the note, had to pass on all checks that went out and had charge of the financial affairs of the concern prior to this proposition advanced and made by Mr. Benton and the acceptance thereof."

Mr. Wengler testified that "Mr. Benton knew what the indebtedness was better than we did, because he kept the books when he was manager of the company. Mr. Benton had a bookkeeper and Mr. Benton had charge of the books. I heard Mr. Benton say that the company owed Mr. Young. $2,500.00. That was talked about several times. Mr. Benton told us several times how much we owed and what the indebtedness was."

3. We may consider together the two elements of the finding "That upon the twenty-fourth day of April, A. D. 1908, and immediately after the execution of said agreement by said defendant, plaintiff released and discharged said corporation, Redding and Big Bend Lumber Company, of and from all liability to pay said indebtedness due upon said promissory note, and accepted the substitution and agreement of defendant herein, in lieu thereof."

James E. Isaacs, an attorney at law, testified that he "acted as attorney for the Redding and Big Bend Lumber Company in the transaction wherein the property of the company was transferred to T. H. Benton," and Thomas B. Dozier represented Mr. Benton. He detailed the various conferences between the parties and the final interview when

a settlement was reached. As to this last he said: ''There was quite a little talk; and finally Mr. Young says: 'Mr. Dozier, is my claim—my note secured by this agreement?' and Mr. Dozier says, 'Certainly, your note is a valid claim against the Redding and Big Bend Lumber Company.' Mr. Young says, 'Well, when will it be paid?' and Mr. Dozier kind of turned towards Mr. Young and smiled and says, 'I can't tell you that, Mr. Young, I don't know; but I presume that it will be paid when the other creditors will be paid.' And thereupon, in the presence of Mr. Dozier, Mr. Benton's attorney, myself and all the others present, Mr. Young got up and says, 'That settles it. That is all I want to know. I am satisfied. I am willing to take Mr. Benton, if the transfer is made for the indebtedness and that is all I care about.' ''

Other witnesses, including the plaintiff, testified similarly. It is quite apparent, indeed, that the corporation had in view this claim of Young as well as of others, and that it transferred all of its property to appellant upon the understanding among all the parties that the novation should be effected.

4. The court committed no error in receiving in evidence exhibits ''B'' and ''C.''

The former contained the terms agreed upon by appellant and by Bass, Buick, and Wengler as stockholders of the corporation and owning more than two-thirds of its capital stock, in accordance with which terms said stockholders were ''to proceed immediately to call the requisite stockholders' meetings'' and thereby said Bass, Buick, and Wengler agreed ''to vote all stock now standing in our names upon the books of the company in order to carry out the terms'' prescribed therein.

That this agreement contemplated the transfer of the corporation's property to Benton and the assumption by him of the corporation's liabilities is too plain for argument.

Exhibit ''C'' was the corporation's deed to Benton. That it was made in pursuance of the agreement contained in Exhibit ''B'' was alleged in the complaint and not denied by the answer. It was also so found by the court and the finding is not assailed.

In fact, these two instruments constituted the basis for the novation relied upon by respondent and without them in evidence his case would not have been complete.

5. The appellant suffered no possible injury by the declination of the court to state upon what ground and for what purpose it admitted the said promissory note in evidence. Appellant conceded that it was admissible for the purpose of marking the extent of the new obligation. It was also evidence of a valid and existing indebtedness of the corporation at the time of the execution of said agreement of April 24, 1908.

We must assume that the court considered it only for a competent and relevant purpose. It is difficult to conceive how it could have been otherwise regarded.

6. Of a large number of declared errors, the action of the court in overruling appellant's objection to the following question may be taken as an example: "What if anything did Mr. Young have to say concerning the acceptance of this proposition?" The ruling is questioned for the reason "that it is affirmatively shown from the record that the defendant, Benton, was not present when any statements were made by the plaintiff and that said statements were self-serving declarations which in no wise bound the defendant. (*Bell v. Staacke*, 141 Cal. 186, [74 Pac. 774].)"

The witness answered substantially that Mr. Young said that he was satisfied with the contemplated arrangement and that he was willing to accept Mr. Benton for the corporation's indebtedness.

If it was important to prove that Mr. Young agreed to the novation, it is not perceived why it was not proper to show what he did and said in reference to the proposition. Since it is not contended that his acquiescence was or required to be reduced to writing, it would seem that the court followed the only method of ascertaining whether Young agreed to the substitution of the new debtor and the release of the old.

The evidence was not hearsay for the reason that the issue involved the very statement that Young made.

It appears that it was somewhat difficult to get all the creditors of the corporation to accept Benton for the debt, and after some considerable controversy, this final meeting was held and at that time the last obstacle seems to have been removed and the purpose of the evidence, as already indicated, was to show Young's acquiescence in the final consummation of the negotiations.

It was not necessary for Benton to be present. He had already submitted the proposition to assume certain liabilities of which this was one. As far as he was concerned, he had already agreed to the novation upon the consideration that the corporation would transfer its property to him. As to whether Young would agree to it or not was of moment to said Young and the Redding and Big Bend Lumber Company, and so we find that shortly thereafter the corporation, satisfied, no doubt, with the agreement of its creditors, made said transfer.

Besides, without detailing the evidence, it may be said that it justifies the inference that Mr. Dozier was authorized to represent Mr. Benton in the transaction. The conduct and declarations of these gentlemen certainly create that impression although probably no express authority was conferred.

It is true that the court seemed to be in doubt whether said evidence was admissible if Mr. Benton was not actually present at the conference and, upon a motion to strike it out on the ground of his absence, the court declared that, unless it was shown later that Mr. Benton was present, "this testimony of the witness will go out on that score."

Appellant complains that the court never ruled upon the motion. Even so, it was without prejudice as the ruling should have been adverse to appellant. Again, it was agreed, as stated by him, "at the time we take up the argument that we can point our motion to strike out to the particular evidence we desire to strike out." The record is silent as to what was done in the premises at the time of the argument, and we certainly cannot presume that appellant called the attention of the court to the matter.

7. Particular objection is made to the testimony of various witnesses to the effect that, at the final conference hereinbefore referred to, Mr. Dozier declared that the claim of Mr. Young was included in those assumed by Mr. Benton. This point might be dismissed, like the last, with the suggestion that it was covered by the motion to strike out to be determined at the argument, but the ruling was warranted on the ground of agency; and, besides, it may be said that the evidence could not have affected the result as it appears, substantially without conflict, that this indebtedness was shown by the books of the corporation.

After a careful examination of the record we can see no reason for interfering with the action of the court below, and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 5, 1913.