[Civ. No. 3575. Second Appellate District, Division Two.—January 26, 1922.]

WILLIAM S. MAHAN et al., Plaintiffs and Respondents, v. J. D. MILLAR, Defendant, Cross-Complainant and Appellant; TITLE INSURANCE AND TRUST COMPANY (a Corporation), Cross-Defendant and Respondent.

WILLIAM S. MAHAN et al., Plaintiffs and Respondents, v. CALIFORNIA OIL DEVELOPMENT SYNDICATE (a Corporation), Defendant, Cross-Complainant and Appellant; TITLE INSURANCE AND TRUST COMPANY (a Corporation), Cross-Defendant and Respondent.

[1] PLEADING—CROSS-COMPLAINT—WHEN PERMISSIBLE.—A cross-complaint is permissible in an action only when a defendant seeks affirmative relief against any party relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates.

[2] ID.—QUIETING TITLE—AFFIRMATIVE RELIEF—PROPERTY OTHER THAN DESCRIBED IN COMPLAINT.—A cross-complaint does not "affect" the property to which an action relates within the meaning of section 442 of the Code of Civil Procedure when it seeks affirmative relief concerning a single and indivisible parcel of land which includes within its boundaries a lesser tract, which lesser tract is the subject of the action as shown by the allegations of the complaint.

[3] ID.—RELIEF—INSUFFICIENCY OF CROSS-COMPLAINT.—A proper case for a cross-complaint is not shown in an action to quiet title where the pleading fails to bring the property described in the complaint within the range of the relief asked by the cross-complaint.

APPEAL from judgments of the Superior Court of Ventura County. Merle J. Rogers, Judge. Affirmed.

The facts are stated in the opinion of the court.

3. Right to affirmative relief on cross-bill in action to quiet title, note, Ann. Cas. 1917D, 674.

L. B. Stanton for Appellants.

Robert M. Clarke for Respondents Mahan.

Erle M. Leaf, Otis H. Castle and Elvon Musick for Cross-defendant and Respondent Title Insurance and Trust Company.

WORKS, J.—The Mahans commenced an ordinary action to quiet title against Millar, the real property described in the complaint being a certain parcel of land which we shall designate as Tract X, consisting of 360 acres. It appearing that California Oil Development Syndicate, hereinafter called the Syndicate, had acquired the interest of Millar in Tract X, the Mahans then commenced an action to quiet title to that tract against the corporation named. Millar filed an answer in the first action denying certain allegations of the complaint and he also, together with the Syndicate, filed a cross-complaint against the Mahans, by which pleading Title Insurance and Trust Company, which we shall below refer to as the Trust Company, was brought in as a cross-defendant. It was then stipulated that the two actions might be consolidated for trial, an order being entered accordingly. It was also stipulated that the answer and cross-complaint filed by Millar in the suit against him might stand as an answer and cross-complaint in the suit against the Syndicate. The cross-complaint was later supplanted by an amended cross-complaint. This pleading was demurred to by the Mahans on the ground that it "does not state facts. sufficient to constitute a cause of action" and by the Trust Company on the ground that it "does not state facts sufficient to constitute a cause of action by way of cross-complaint." The trial court sustained these demurrers without leave to amend and upon that ruling rendered judgment in favor of the Trust Company. The consolidated causes were then heard upon the issues presented by the two complaints and the answer which was interposed as to one complaint and which was stipulated to stand as to the other. Judgment was thereupon rendered in favor of the Mahans, plaintiffs in each action. Millar and the Syndicate appeal from that judgment as well as from the judgment in favor of the Trust Company.

The only point presented by the appeals is as to the correctness of the ruling of the trial court in sustaining the demurrers to the amended cross-complaint. In arguing that question counsel not only present objections designed to demonstrate the failure of the amended cross-complaint to state a cause of action, but they argue the question whether that pleading shows a proper case for cross-complaint under the Code of Civil Procedure, section 442, a question which involves a consideration of matters other than those appearing on the face of the amended cross-complaint; that is to say, it involves a comparison of the allegations of the cross-pleading with those of the two complaints. Without conceding that the question whether a cross-complaint is proper in a given case may be presented by a demurrer to it, we have determined to pass upon that question in the present instance for several reasons. In the first place, counsel evidently consider that the point is properly raised and have argued it fully. In this connection it is to be noted that the demurrer of the Trust Company is so framed as to attempt to present the question. Next, the point is basic to the rights of the parties and, logically, should be settled before a resort is had to the question whether the amended cross-complaint states facts sufficient to constitute a cause of action. Then, also, the supreme court has many times considered the point upon demurrer, doubtless for reasons such as those we have just mentioned, for in none of the cases was it argued whether the question was proper or improper to be considered in that manner (see *Demartin* v. *Albert,* 68 Cal. 277 [9 Pac. 157] ; *Winter* v. *McMillan,* 87 Cal. 256 [22 Am. St. Rep. 243, 25 Pac. 407] ; *Clark* v. *Taylor,* 91 Cal. 552 [27 Pac. 860] ; *Silver Creek L. & W. Co.* v. *Hayes,* 113 Cal. 142 [45 Pac. 191] ; *Goodell* v. *Verdugo Canyon Water Co.,* 138 Cal. 308 [71 Pac. 354] ; *Earl* v. *Times-Mirror Co.,* 185 Cal. 165 [196 Pac. 57] ).

We take up, then, the question whether the amended cross-complaint was proper under the law providing for the filing of pleadings of that nature. We have already observed that the two pleadings filed by the Mahans were ordinary complaints to quiet title and that the real property described in them was a parcel which we have designated as Tract X. The amended cross-complaint alleges that the Mahans and Millar had entered into a contract whereby the former had

employed and agreed to employ the latter to sell certain
real property consisting of 160 acres, a description of which
is inserted in the pleading and which we shall hereafter
refer to as tract ABC. Tracts X and ABC are contiguous
to each other. The amended cross-complaint further alleges
that the contract whereby Millar was employed to sell Tract
ABC was merged into a declaration of trust executed to the
Trust Company. A copy of this instrument, which was
signed by the Syndicate and the Mahans, is attached to the
amended cross-complaint as an exhibit. Its legal effect is,
however, stated in that pleading as follows, as shortened by
ellipses: "That in said declaration of trust it is provided
. . . that said Trust Company held . . . said real property
in trust for the following uses: To secure the payment to
[the Mahans] of the sum of $24,000.00 with interest . . . ;
to sell and convey to purchasers investment units, herein-
after described, . . . ; to convey to the Syndicate an un-
divided one-eighth interest in the community oil properties,
hereinafter described in each tract, after the investment units
were sold . . . ; to distribute the proceeds of the sale of
investment units the first one-third to the Syndicate . . . ,
the second one-third to [the Mahans] upon said sum of
$24,000.00 and payment for the services of said Trust
Company . . . ; and the third one-third to the accumula-
tion of a fund for the development of petroleum in said
property; upon failure to make payment to [the Mahans]
out of the proceeds of such sales within [a certain period]
upon demand of [the Mahans] and after publication of
notice . . . to sell said real property . . . to the highest
bidder. . . ." Leaving for a moment the terms of the
declaration of trust, the amended cross-complaint then al-
leges that 400 out of 432 lots in each tract of twenty acres
of the entire Tract ABC are called "Investment Units"
and are the sole lots therein to be offered for sale; and that
the remaining thirty-two lots are entitled "Community Oil
Properties," upon which the exploitation of said lands for
petroleum was and is to be made as specified in the decla-
ration of trust. Again taking up the provisions of the dec-
laration of trust, the amended cross-complaint avers that
it is "provided therein that all deeds, . . . and other in-
struments affecting said property . . . shall be executed by
said Trust Company, . . . that the Syndicate is appointed

agent of the trustee in making the sale of the property aforesaid, to generally assume the care and custody thereof and said Syndicate was thereby by [the Mahans] appointed their agent for the sale and improvement of said property and institute a selling campaign. . . . That said Syndicate was instructed to divide said real property into tracts of twenty acres each and subdivide and sell in each of said tracts 400 of the 432 lots into which each tract was and was to be divided.'' The amended cross-complaint next alleges that on the day preceding the execution of the declaration of trust the Mahans and Millar, ''acting for and on behalf of said Syndicate,'' entered into a certain agreement, copy of which is attached to the pleading as an exhibit. That agreement we shall hereafter refer to as Exhibit ''B.'' It is alleged in the amended cross-complaint that ''under and by'' Exhibit ''B'' the Mahans agreed to sell and convey Tract X, ''which is the same real property described in the complaint of [the Mahans] herein for the purchase price of $90,000.00, one-fourth of which said sum was . . . to be paid on or before [a certain date] with interest . . . ; . . . that [Exhibit 'B'] should not become effective unless the sum of $10,000.00 . . . should have been paid on or before [a certain date] to [the Mahans] upon the purchase price of Tract ABC which was and is the subject of said declaration of trust.'' It is alleged in the amended cross-complaint that at the time of the execution of Exhibit ''B'' it was known and understood by the parties to it that Millar executed it on behalf of the Syndicate; that the consideration for its execution ''flowing to [the Mahans] which is expressed in said contract as 'other good and valuable consideration' is and was the performance'' by the Syndicate in the sale of Tract ABC; that the consideration for the execution of Exhibit ''B'' flowing to Millar and the Syndicate was ''the opportunity thereby given for the development of the lands adjacent to'' Tract ABC ''by means thereof and the efficacious use of the advertising campaign to be undertaken in the sale of'' Tract ABC upon Tract X; ''that immediately consequent upon the completion of sales of the lands described in said declaration of trust [Tract ABC] and development of the properties therein that said lands [Tract X] described in said contract [Exhibit 'B']` should be made the subject with said Trust

Company of a trust identical with that hereinabove described; that one of the considerations for the undertaking of the duties and obligations imposed upon said Syndicate under said declaration of trust was the contract [Exhibit 'B']; that said declaration of trust and said contract [Exhibit 'B'] were in truth and in fact but parts of one and the same transaction and interwoven; that said real property [Tract X] described in said Exhibit 'B' lies adjacent to and upon each side of the real property [Tract ABC] described in said declaration of trust and that the whole thereof was and is understood and intended by each and all of the parties hereto [*sic*] to make up and comprise one general plan for the development of the lands of [the Mahans] for the mutual interest and profit of all of the parties hereto; and that all of said real property [Tract X] described in said Exhibit 'B' was and is susceptible of development and sale under the plan and for the purposes as set forth in said declaration of trust''; . . . that it was understood and agreed by the parties that the clause in Exhibit ''B'' ''involving'' the payment of $10,000 ''was inserted . . . solely and only to put a premium upon and permit an admeasurement of the practical success of the plan of development of said lands and that said sum . . . was to be derived solely and only from the sales of lots in said lands [Tract ABC] described in said deed to said Trust Company.'' We have not found it necessary to repeat all the allegations of the amended cross-complaint, which is very lengthy. Being less specific as to the remainder of the pleading we state that there are set forth in it the fact that the Mahans and the Trust Company wrongfully refused to perform their obligations under the declaration of trust and that thereby Millar and the Syndicate were prevented from performing certain covenants by them agreed to be performed under the trust arrangement. We do not set forth these allegations in detail for the reason that we shall assume, as a basis for the discussion which is to follow, that the refusal of the Mahans and the Trust Company to carry out the trust arrangement was wrongful and that it operated to prevent Millar and the Syndicate from performing all the obligations resting upon them under the declaration of trust. We make these assumptions, not because we are satisfied with the sufficiency of the allegations of the amended

cross-complaint on the subjects to which they relate, but merely for the sake of the argument of the question before us. The amended cross-complaint also alleges that Millar and the Syndicate have expended certain considerable and specified sums "in the survey and subdivision of *said lands,* in the preparation of advertising matter, in the employment of agents, traveling expenses, and other expenses incident to the proper presentation of the advantages of said investment plan in the development of *said lands* before the public and in the employment of experts in petroleum development and preparation for the development of *said lands.*" The italics are ours and they are employed for the purpose of indicating that it is not shown by the pleading *what* lands the expenditures were made upon or in connection with. It may be assumed, however, that the outlay concerned either Tract X, or Tract ABC, or the entire body of land composed of both tracts, as shall appear most advantageous to the contentions of Millar and the Syndicate. We are now brought to the prayer of the amended cross-complaint. It is, in effect, that the Mahans take nothing by their action; that they be required to execute to the Trust Company, or to a trustee to be designated by the court, deeds to "the whole of the real property hereinabove described to be administered upon under the order of this court and in accordance with the terms and provisions of the trust agreement hereinabove described"; that an accounting be had of the rent, income and profits of "said real property" from the date of Exhibit "B" to the date of decree, and "that the same, if found to be received by [the Mahans] be made applicable to the payment of the sum and sums to be received by [the Mahans] under said contracts"; that the declaration of trust be reformed in the following particulars: 1. That the time for the performance of the covenants of Millar and the Syndicate be extended; 2. That the real property Tract X "be expressly made subject to the provisions of said declaration of trust and to subdivision and sale thereunder"; and, 3. That the declaration of trust and Exhibit "B" "be reformed in such other way or ways as the evidence in this cause and the rights of the parties hereto upon the trial hereof may seem to require in justice and equity"; that in case no specific performance is decreed the court award to

Millar and the Syndicate damages in the sum of $253,040; that all other relief be granted which is meet and agreeable to equity.

Before we undertake a discussion of the question with which we are confronted, let us recapitulate the situation: 1. The complaints to quiet title relate only to Tract X; 2. Exhibit "B" relates only to Tract X; 3. The declaration of trust relates only to Tract ABC, the two tracts being contiguous; 4. The theory of Millar and the Syndicate is that the two tracts are to be considered as one and indivisible, because of an understanding that Tract X was to be brought within the operation of the declaration of trust along with Tract ABC; 5. Accordingly, among other things, it is prayed that the declaration of trust be reformed to include Tract X within its terms, thus making the two tracts one and indivisible; 6. It is also prayed, in effect, that the provisions of the declaration of trust be specifically enforced, after reformation in such manner as to make the two tracts one.

[1] A cross-complaint is permissible in an action only when a defendant seeks affirmative relief against any party: 1. Relating to or depending upon the contract or transaction upon which the action is brought; or, 2. Affecting the property to which the action relates (Code Civ. Proc., sec. 442). It is at once evident that the present case does not fall within the first requisite of the section, for it is plain that the complaints to quiet title were based upon neither a contract nor a transaction. Those complaints did, however, relate to property. Does the case, then, come within the second requirement of the section? No authority is cited in any of the briefs which exactly fits the question thus presented, but two which are relied on by respondents cast some light on the subject (*Bulwer Con. Min. Co.* v. *Standard Con. Min. Co.*, 83 Cal. 589 [23 Pac. 1102]; *Andreson Co.* v. *Regenold*, 166 Cal. 44 [134 Pac. 999]), although the rule announced by them would appear to be obvious. They were both actions to quiet title and they are to the effect that matter in a cross-complaint referring to parcels of land other than those described in the complaint may be stricken on motion. There is at least one other opinion in the reports to the same general effect (*McFarland* v. *Matthai*, 7 Cal.

App. 599 [95 Pac. 179]), the question there, however, having been considered on demurrer and not on motion to strike. We may remark, parenthetically, that this case might have been included in the list of decisions first set forth in this opinion but for the fact that the cases intended to be cited there were limited to those passed on by the supreme court. In the present case there could be no successful motion to strike matters in appellant's pleading referring to Tract ABC. That is manifest. The amended cross-complaint, as we have already observed, in theory fastens that tract to Tract X so securely that, perforce, the pleading can only be viewed as contemplating a single parcel of land which may be termed Tract ABCX. That entire tract, under the averments made by appellants is in theory the sole and indivisible object of the trust reposed in the Trust Company, and, under those averments, the trust cannot be administered upon any part of Tract ABCX to the exclusion of any other part—no more upon Tract ABC alone than upon Tract X alone. The amended cross-complaint must be upheld as a pleading seeking to enforce rights concerning Tract ABCX in its entirety or it is not to be upheld at all. We cannot believe that the legislature, in enacting section 442, intended that the right to file a cross-complaint should extend so far. [2] It cannot be that in a legal sense, speaking in the terms of the section, a cross-complaint *affects* the property to which an action relates when it seeks affirmative relief concerning a single and indivisible parcel of land which includes within its boundaries a lesser tract, which lesser tract is the subject of the action as shown by the allegations of the complaint. So we construe the enactment.

Under suggestion of the foregoing argument there arises another and more certain and conclusive reason why the amended cross-complaint does not show a proper case for a cross-complaint. If we admit, without deciding, that it states a case as to Tract ABC, the pleading being thus rendered impregnable against attack under a general demurrer, we are met with an entirely different situation as to Tract X. While, as we have already observed, the theory of the entire amended cross-complaint is that Tract ABC and Tract X compose a single and indivisible Tract ABCX, the allegation by which it is intended to show that they are one is utterly

insufficient. Their unity is to be established only through a reformation of Exhibit "B" and of the declaration of trust in such manner as to bring Tract X within the provisions of the latter, the express terms of the instrument including only Tract ABC. The right to reformation is claimed only upon the ground that one of the considerations flowing to Millar and the Syndicate for the execution of Exhibit "B" was "that immediately consequent upon the completion of sales of lands described in said declaration of trust [Tract ABC] and development of the properties therein that said lands [Tract X] described in said contract [Exhibit 'B'] should be made the subject with said Trust Company of a trust identical with that hereinabove described," and it is also alleged "that said real property [Tract X] described in said Exhibit 'B' lies adjacent to and upon each side of the real property [Tract ABC] described in said declaration of trust and that the whole thereof was and is understood and intended by each and all of the parties hereto [*sic*] to make up and comprise one general plan for the development of the land of [the Mahans] for the mutual interest and profit of all the parties hereto." That is all— simply that and nothing more. There is no attempt to show that the so-called "consideration" was omitted from Exhibit "B" through either fraud, mistake, or undue influence, and the reformation of an instrument is of course not possible without some showing of that nature. We wonder whether appellants, in pleading this missing link as a part of the "consideration" for Exhibit "B" did so in reliance upon the rule that the statement of consideration in a written instrument is not conclusive upon the parties and that such a statement may be varied by parol proof of the true consideration. If such was their object the effort does not reach the mark. The understanding between the parties, sought now to be injected into Exhibit "B," could find place there only among and as part of the covenants of the agreement. It could not be consideration within the meaning of the rule we have stated. [3] It thus appears that appellants have failed to bring Tract X within the range of the relief asked by their pleading and, as that tract is the only property described in the complaints to quiet title, it is manifest that on this ground there is a failure to show a proper case for a cross-complaint.

In discussing these questions we are not unmindful of the rule of law to the effect that a pleading may be treated as an answer even though its framer has called it a cross-complaint. Granting that the allegations of the amended cross-complaint here as to Exhibit ''B'' might amount to proper defensive matter under other conditions, we are forbidden upon several considerations so to regard them in their present setting. In the first place, although the circumstance is not altogether controlling, the parties in their briefs treat the pleading as a cross-complaint and as nothing else. Next, however, and more to the point, they *seem,* so far as the record discloses, never to have aided the trial court to a view of it as anything but a cross-complaint. Then, it will be remembered that no assault whatever is made upon the two judgments except upon the ground that demurrers to the amended cross-complaint were improperly sustained. A trial was had upon the issues formed by the complaints and the answer interposed to them, but no record is brought up disclosing what the evidence was on the trial. This latter circumstance is of particular moment in view of allegations of the answer to which we have not yet drawn attention. One of the paragraphs of that pleading is to the effect that the defendant ''Admits that plaintiffs are the owners of all that certain real property particularly described in paragraph one of the complaint of plaintiffs, subject, however, to the rights and to the title and interest of this defendant and of others in interest with him as more particularly set forth in the cross-complaint filed contemporaneously herewith, to which said cross-complaint reference is hereby made for all particulars of said claims and interests and to the particular estate in said real property as therein stated and alleged.'' Strictly speaking, this was of course no proper way to plead by way of answer such defensive matter, if any, as may be included in the allegations of the amended cross-complaint. Still, if no objection were made by the opposing parties, the court might have regarded the averment as an adoption or importation of the allegations of the cross-pleading and might have heard evidence in support of them. Perhaps it did. Certainly, no attempt whatever is made by appellants to show by the production of a record here that they did not have an opportunity to present at the trial all evidence in their possession which by any possibility could have amounted to

a defense. In short, we are given the opportunity to pass upon no question except the one that demurrers to a *cross-complaint* were improperly sustained. Having resolved that question, there appears to be no other office that we may perform. These remarks are based upon the idea that matters alleged in the amended cross-complaint *may* state a defense. We have not determined whether they *do* state one. For the reasons just given that labor would have been one of supererogation.

Both judgments are affirmed.

Finlayson, P. J., and Craig, J., concurred.