[L. A. No. 18160. In Bank. Apr. 19, 1943.]

FORMAN A. FRAZURE, as Administrator, etc., Respondent, v. HAROLD P. FITZPATRICK, Appellant.

E. Llewellyn Overholt for Appellant.

Nixon A. Lange for Respondent.

THE COURT.—This cause was transferred to this court after decision by the District Court of Appeal, Second Appellate District, Division Two, not because of any dissatis-

faction with the conclusion there announced, but for the sole purpose of deleting from the opinion certain language which we deemed, in part, an incorrect statement of the law. This language we have therefore eliminated, and the balance of the opinion, which was prepared by Mr. Justice pro tempore Gould, we adopt as and for the decision of this court. It is as follows:

In this action Forman A. Frazure, as administrator of the estate of Alexander M. Frazure, his deceased father, seeks to recover for the estate and to quiet title of the estate in and to a promissory note and deed of trust held in his own name by defendant Harold P. Fitzpatrick, nephew of said deceased. Plaintiff prevailed, the trial court decreeing that the heirs and devisees of deceased were the beneficial and equitable owners of the note and trust deed, subject to the administration of decedent's estate; that plaintiff as administrator was entitled to the possession thereof and that defendant Fitzpatrick held the same in trust for said estate and, ordering defendant to assign the same and deliver possession thereof to said administrator and to account for the installments upon the trust deed note collected by him since the death of Alexander M. Frazure.

Defendant Fitzpatrick's counterclaim for $9,600 ''on account of work and labor performed and for necessaries of life furnished by defendant to said decedent'' was disallowed by the court *in toto,* and a cross-complaint upon a rejected creditor's claim asking the same amount for services rendered deceased in his lifetime was dismissed on the court's own motion.

Defendant Fitzpatrick appeals. Of the other defendants named in the action, California Trust Company, trustee under the deed of trust, defaulted, and Monroe C. Frazure, another son of decedent, filed only a formal written appearance in the case and took no steps therein after pronouncement of judgment.

Decedent Alexander M. Frazure came to Los Angeles in the year 1920. His wife and children remained at the family home in Gary, Indiana, and although his son Forman, respondent herein, followed him to California a few months later, decedent's wife refused to change her place of abode. For a few months decedent lived at the home of his wife's sister, mother of appellant, in Los Angeles, where he paid for his room and board. Later he stopped at rooming houses or hotels with his son.

In June, 1923, decedent decided to purchase a house and lot in Los Angeles for $7,500, of which $2,500 was to be a cash payment out of funds then in the possession of decedent and the balance of $5,000 was to be represented by two promissory notes secured by mortgages upon the property purchased. An escrow was opened for the purchase of the property in the name of decedent. However, when the notes and mortgages were prepared and sent to decedent's wife in Indiana for her to join her husband in their signing and execution, she refused to do so.

At this juncture appellant became connected with the title to the property. According to appellant's own testimony as given at the trial, decedent, when his wife refused to sign the papers, said to appellant: "Alice [wife of decedent] has refused to sign the escrow papers, and refused to come out here, and refused to live with me, and I could not stand those cold winters back east . . .; and I have got to have a home to live in, and that is a nice place out there, and because you have done so much for me, and you got me this fine position with the school board, and it helped me out, so I will help you make the payments on it and it is your property . . . and if you let me collect the rent and stay there and have a place to live, and if you promise to take care of me and help me out the best you can the rest of my life, I will leave whatever I have to you, and whatever I have in my estate to you." Appellant, according to his narrative, protested that he was already deeply in debt and did not care to assume any further obligation. Nevertheless, so he testified, he yielded to his uncle's importunities and consented to take the property in his name and to assume liability for the indebtedness by signing the notes. Accordingly the name of the purchaser in the escrow was changed from decedent to appellant and title to the property was taken in the latter's name.

This is the transaction, the oral contract, upon which appellant bases his claim to the property. He had theretofore, he claims, rendered certain services to decedent in the matter of companionship and care, and at the time the house and lot were acquired he promised to allow the property to remain in his name, to look after it and be responsible for it, and to continue the personal services to his uncle. His testimony as to such an oral contract was corroborated by his mother, who stated she was present at the time of the colloquy in 1923. There is no other corroboration in the record.

 As to the services theretofore rendered by appellant to his uncle, they consisted of the merest perfunctory courtesies which might be shown by one friend to another, even without the obligation of close relationship such as existed between appellant and decedent. The same may be said of so-called services rendered by appellant after the realty transaction. He at times took decedent riding in his automobile, visited him at the hospital, took him to a physician and occasionally entertained him at his home. The court was thoroughly justified in concluding that the "services" for which compensation and reward is here claimed were simply the courtesies which are commonly rendered by one human being to another without any promise or hope of payment, and are of no pecuniary value. They do not sufficiently bolster up appellant's claim that they constituted consideration for decedent's surrendering to appellant his property.

 In March, 1937, the property was sold for $5,000, payble $800 in cash and $4,200 represented by a promissory note and trust deed payable in installments of $40 per month. The note and trust deed were made payable to appellant and remained at all times in his possession.

Alexander M. Frazure died in February, 1940, at the age of eighty years. His son was appointed administrator of his estate and as such brought the within action to recover the note and trust deed for the estate.

In spite of the fact that title to the property in question stood in the name of appellant, and the note and trust deed upon sale thereof were made payable to appellant and were retained in his possession, it is significant that decedent actually exercised complete control over the property from the time of its purchase in 1923 until his death in 1940. He paid the initial cash purchase payment as well as subsequent payments as they fell due; he lived in the house a portion of the time, and when it was rented he selected the tenants and collected the rentals; he reimbursed appellant for all taxes and assessments paid, and all payments on the note given on the sale of the property were turned over to decedent by appellant. In fact, appellant had difficulty in showing any item of disbursement from his own funds with reference to the property, and the court was justified in concluding, as it did, that decedent paid the entire purchase price and all expenses for upkeep out of his own money solely, and that appellant at no time contributed any part of the purchase money or expenses for upkeep out of his own funds. Such

testimony as was given regarding appellant's expenditure for the benefit of the property at most created a conflict in the evidence, and with the court's determination upon that conflict it is not the province of this court to interfere.

With the record in this condition, it is apparent that the trial court's determination of the case, disallowing appellant's claims and restoring the property to decedent's estate to which it rightfully belonged, accomplished the only fair, just and equitable solution possible in the premises. The same considerations dispose of appellant's main contention that the evidence was insufficient to sustain the judgment. Not only was the evidence sufficient, but it was compelling and the court's conclusion is fortified by the presumption, codified in section 853 of the Civil Code, that "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." Case law is legion in support of this elementary principle.

Aside from the principal contention as to the insufficiency of the evidence, appellant's argument concerns itself with a number of minor items. ▆ It is urged that the court failed to find upon the question as to whether the property in question was the community property of decedent and his surviving widow. Such matter, it is claimed, was placed in direct issue by the answer. But it is wholly immaterial to appellant whether or not the property is community or separate, and he may not complain if he is not injured by the failure of the court to make a finding thereon.

▆ Appellant also complains that the surviving widow should have been made a party to the action. If such be the case the misjoinder was apparent upon the face of the complaint, and appellant by not demurring waived his objection. (Code Civ. Proc., § 434.)

▆ As to the claimed necessity for findings upon the special defense of the statute of limitations, this point is disposed of by the court's finding that appellant held such property as trustee for decedent and faithfully performed his duties as such trustee up to the death of decedent, February 16, 1940. Inasmuch as there was no repudiation of the trust, the statute of limitations could not be set in motion, and therefore no separate finding on that point was necessary.

▆ The trial court admitted in evidence in behalf of respondent two writings, one unsigned and one signed "A. M.

Frazure," identified as being in the handwriting of decedent, in which mention is made of the trust deed in controversy here as belonging to the writer of the documents, which, apparently, were unsuccessful attempts to make testamentary disposition of this and other property. These documents were found in decedent's tool chest. It may be conceded that commonly declarations of a person, since deceased, may be received under such circumstances as here obtain only when the declarations are against the interest of the person making them or those claiming under him, and not when such declarations are in favor of those who claim rights which would be upheld and sustained by the declarations, oral or written, which are sought to be introduced. (Code Civ. Proc., § 1946.) However, as noted in the case of *Hotaling* v. *Hotaling,* 187 Cal. 695 [203 P. 745], there are exceptions to this general rule, as where "failure to assert a claim or right may be construed against the party as an implied negation." In the case under review here, appellant maintained that under his oral contract with decedent the latter as the final act upon his part was to make a will in favor of appellant. This testamentary act being a part of the transaction alleged by appellant, evidence concerning such act or the omission thereof was admissible as part of the whole transaction and contract asserted by appellant. (Code Civ. Proc., § 1850; *Young* v. *Benton,* 21 Cal.App. 382 [131 P. 1051]; *Whitlow* v. *Durst,* 20 Cal.2d 523 [127 P.2d 530].)

Furthermore, appellant himself at a later point in the case on direct testimony testified concerning a conversation with decedent in which reference was had to a "will in my tool chest." Even conceding for the purpose of argument that the two writings were improperly admitted in evidence, the error, if any, may be disregarded in considering the case as a whole and was not prejudicial to appellant. Quite evidently the court rejected as unworthy of belief appellant's entire testimony, and there was ample evidence in the record to substantiate the findings and to sustain the judgment of the court without the writings in question.

Error is likewise asserted by appellant because certain letters received by him from decedent were excluded by the court. One of these, dated two years prior to the alleged contract of 1923, expresses decedent's attitude toward his wife and other members of his family. This letter has no apparent relevance to any matter at issue in the present case and was written two years before decedent had his first

transaction about the property in question. Obviously it was properly rejected by the court.

Also, the court's action in refusing four letters with reference to collections by appellant of payments upon the trust deed note must be sustained. Other evidence, including the checks themselves in payment of the collections, established the fact that appellant had paid the money to decedent, and the letters could have had no further value to appellant than to establish that fact.

Appellant contends that the court improperly injected the issue of adverse possession into the case by finding that decedent held the property adversely to appellant. As a matter of fact there was no issue of adverse possession presented by the pleadings. The suit was upon a resulting trust, and while the court found that decedent was in actual, continuous, open and notorious possession of the property from the date of its purchase in 1923 to the date of its sale in 1937, this finding is not addressed to any issue of adverse possession but, coupled with the finding that during said period appellant held title to said property in trust for decedent, is pertinent and proper in establishing that decedent was the equitable and beneficial owner of said realty although appellant held the fee title in his name.

In addition to the complaint and answer thereto, there was on file a cross-complaint and a counterclaim. The cross-complaint was before the court on written stipulation of counsel that it might be filed and tried at the same time as the issues joined in the complaint. The trial court, however, on its own motion dismissed the cross-complaint, and this action of the court is cited by appellant as error. The complaint itself sought to establish a resulting trust and to quiet title of the estate in the note and trust deed. The cross-complaint was brought upon a rejected claim theretofore filed by appellant against the estate of decedent, in which appellant asked judgment for $9,600 and interest for services rendered to decedent from December 15, 1920, to February 15, 1940, a total of 232 months, at the rate of $40 per month for 228 months, and $100 per month for 4 months. The services alleged in the cross-complaint were for care, board, room and for acting as "companion, counsellor and benefactor to said decedent," said services having been rendered, it is alleged, at the special instance and request of decedent.

We are of the opinion that the court was justified in its

ruling. The cross-complaint was based upon a cause of action dating back to December, 1920; the complaint itself related to matters having to do with the purchase of the house and lot in 1923, and appellant's defense upon that phase of the litigation was an alleged oral contract as of the date of the purchase of the property. Even if the parties in the two controversies are the same, and although much of the testimony might be identical upon the causes of action stated in the complaint and cross-complaint, those facts alone do not compel the court to entertain the cross-complaint. Here the contract for services alleged in the cross-complaint was entirely separate and distinct from the contract under consideration in the complaint itself; and a cross-complaint is permissible only when a defendant seeks affirmative relief against any party relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates. (Code Civ. Proc., § 442; *Mahan* v. *Millar*, 56 Cal.App. 280 [205 P. 67].)

As to the counterclaim, appellant asked for the sum of $9,600 for work and labor for decedent "within two years last past." The allegations of the counterclaim were specifically and generally denied in a separate "answer to counterclaim." Appellant had deposited jury fees and made written request for a jury trial in advance of the trial date and in due form. When the case was called for trial the following proceedings were had:

"The Court: The procedure, I think, to follow then is to try the issues framed by the complaint and the answer, that is, the equitable suit, and of course that is not a matter for a jury. And if the matter of the cross-complaint is decided favorable to the contentions of the defendant, then that matter, of course, can be tried as a separate jury case. So, at this time I am going to excuse the jury. . . .

"Mr. Overholt: At this time, on behalf of the defendant, I ask that the jury be allowed to try the issues of fact.

"The Court: Well, that question is purely within the discretion of the court, and the court is going to use that discretion contrary to the contention of counsel."

The court then proceeded to hear the testimony relative to the complaint and answer thereto, after which there was a lengthy discussion as to the cross-complaint, terminating in a dismissal of that pleading by the court, and thereupon the court announced that it was ready to receive evidence on the counterclaim. Appellant's attorney then proceeded with-

out objection to put on his evidence relating thereto. No demand was made for a jury with respect thereto, and in fact there is no suggestion in the record that the jury question was mentioned respecting the counterclaim. Under the circumstances it must be held that appellant waived his right, if any he had, to a jury to hear that phase of the case, and he cannot now complain.

Appellant also claims that the trial judge was biased and prejudiced; that he "literally screamed and savagely shouted" at appellant while the latter was upon the witness stand. Nothing in the record, however, discloses any conduct on the part of the court which was prejudicial to appellant's rights; and insofar as it is possible to judge from the cold record appellant and his witnesses were afforded every opportunity to give their testimony untrammelled by interference or intimidation in any degree by the court. Such a remark as the observation of the court which appellant complains of, that his counsel "ought to be penalized for reading law books instead of playing poker," while not to be commended as contributing to the decorum of a courtroom, nevertheless was obviously uttered in a spirit of jocularity, and was in the same breath followed by a legal ruling respecting the admission of evidence favorable to appellant.

Lastly, objection is made to the fact that the motion for a new trial was heard and denied by a judge other than the one who tried the case. It is admitted that the trial judge was outside the county of Los Angeles upon vacation at the time, and therefore the exact situation contemplated by section 661 of the Code of Civil Procedure, authorizing another judge to hear the motion, was presented.

We are satisfied from an examination of the entire record that appellant received a fair trial, that justice was accomplished by the lower court's determination of the case and that any other conclusion than the one reached would have been repugnant to equity and justice.

Judgment affirmed.