[L. A. No. 13980.   In Bank.—May 17, 1934.]

JAMES   SIMPSON   et   al., Appellants, v. ROBERT   C.
GILLIS et al., Respondents.

Thorwald Siegfried, Sydney Sanner and John A. Fleming for Appellants.

Ernest C. Carman, Goudge, Robinson & Hughes, David A. Sondel, Tanner, Odell & Taft and Swanwich, Donnelly & Proudfit for Respondents.

SHENK, J.—The plaintiffs appealed from a judgment entered upon an order sustaining the defendants' demurrer to the first amended complaint without leave to amend, and from an order taxing costs.

By their action the plaintiffs sought to impress a trust upon certain real and personal property which it is alleged was created by virtue of the following facts appearing from said first amended complaint:

Prior to June, 1921, Huntington Beach Methodist Assembly was a subsidiary nonprofit corporation of Southern California Conference of the Methodist Episcopal Church, and was authorized by the latter to issue founders' certificates to persons who desired to invest $1,000 or more each in a tract of land whereon was to be founded a so-called Chautauqua project to be known as Pacific Palisades Association. Two hundred and seventy-five persons became purchasers of founders' certificates at $1,000 each. The certificate provided that the holder was entitled to select a lot of land of the appraised value of $1,000 from a tract of 1,068 acres situate on the ocean front near Santa Monica in Los Angeles County, "acquired under contract" by the subsidiary assembly, and to receive a leasehold interest for a renewable 99-year term, the leases to be modeled after the leases issued at Lake Chautauqua, New York, and Ocean Grove, New Jersey. It further provided "that if the certificate holder does not select a lot within one year he may surrender this certificate and upon ninety days' notice in writing shall be repaid the sum of one thousand dollars with interest at the rate of six per cent per annum from this date".

The defendant Pacific Palisades Association was incorporated on August 9, 1921, pursuant to title XVII, part 4, division 1, of the Civil Code (sec. 649 et seq.), which pro-

vides for the incorporation of colleges and seminaries of learning. It is alleged that the assembly transferred to the association the sum of $275,000 paid by the holders of founders' certificates for the purpose of using it to acquire the 1,068-acre tract.

On January 14, 1922, designated as "Founders' Day", and thereafter, each of the 275 holders of founders' certificates selected a lot, and became a leaseholder of the lot selected by him pursuant to the terms of a lease modeled upon leases used in similar projects, and which provided for a 99-year term renewable without fee. The lease rental was the sum of $1,000 or more, depending upon the appraised valuation of the lot selected, payable upon execution and delivery of the lease, and a further sum not exceeding one per cent per annum on the appraised valuation. In addition the lessee was entitled to receive season tickets admitting him and his family to all meetings held by or under the auspices of the association. The lessee agreed to erect a dwelling-house within three years, subject to certain restrictions, and upon the lessee's failure to comply with this provision the association reserved the right to cancel the lease and return the amount paid as the appraised value of the lot with interest at seven per cent per annum. In addition to the ordinary provisions of a lease, there appeared the particular provision that should the lessor "hereafter decide to discontinue the work for which it is incorporated or to sell or dispose of its holdings in this tract, then it will sell and convey to" the lessee the premises leased upon the further payment of $10.

Between June 1, 1921, and July 11, 1923, and thereafter more than 1500 persons in addition to the 275 "founders" became lessees or owners of lots in lands acquired by the Pacific Palisades Association and by December, 1925, the sums paid for a total of 2,397 of such interests approximated more than $4,780,000. All or many of said persons were communicants of the Methodist Episcopal Church and entered into the religious life of the community.

The plaintiffs, thirteen in number, are some of the original holders of founders' certificates, or assignees thereof, or otherwise owners or lessees of lots in the land acquired by the Pacific Palisades Association, and sue in the action

on their own behalf and on behalf of all of said 2,397 owners of similar interests.

The defendant Pacific Palisades Association on July 5, 1923, took title to the 1,068-acre tract above mentioned, for which it is alleged to have paid the sum of $660,000. On June 23, 1923, the association acquired a 32-acre tract in Los Angeles County from the defendant, Robert C. Gillis, for the sum of $65,000. On the same date it also acquired a tract of 825 acres in Los Angeles County, subject to an encumbrance of $150,000, for the sum of $850,000. The purchase price of said tracts, approximating a total of 1925 acres, is stated to be $1,575,000. The payments made by the owners of leasehold interests in lots, averaging about five lots to the acre, purchased from the defendant Pacific Palisades Association, constituted the source from which payment of the purchase price of lands so acquired was made. All of the lands so acquired have been platted and designated as and are referred to in the complaint as tract 9300. It is stated that of the 1925 acres embraced within tract 9300 there remained unsold on December 31, 1925, 1313 acres thereof unsubdivided and 423 subdivided lots, together with 6168 feet of ocean beach frontage.

It is alleged that sales of lots in tract 9300 showed a decline from $1,088,000 in the first six months of 1924, to $580,600 in the second six months of that year, and to less than $250,000 for the year 1925. On January 11, 1926, the association purchased 226 acres adjacent to tract 9300, called the Huntington Palisades Tract, for which it paid $1,625,000. The plan was to subdivide and sell lots from this tract purely as a real estate venture, there being no intention to combine with the sale access to the religious and educational activities of the association.

The defendant Robert C. Gillis was one of the 275 original holders of founders' certificates, and became a member of the board of trustees of Pacific Palisades Association. He owned practically all of the capital stock of the defendant Santa Monica Land and Water Company. About January 11, 1926, when the Huntington Palisades tract was purchased by the defendant Pacific Palisades Association, it made a contract with Santa Monica Land and Water Company to appoint and it did appoint the latter its exclusive agent to sell lots in said Huntington Palisades for

a commission to it of twenty-five per cent. The association made a similar contract with Santa Monica Land and Water Company to sell lots in tract 9300. The plaintiffs allege that during this period the financial affairs of the association were approaching an insolvent condition.

On April 1, 1926, the association executed a deed of trust conveying the legal title to said Huntington Palisades tract and said tract 9300 to the defendant California Trust Company to secure a $3,500,000 bond issue. On March 31, 1928, the association entered into an agreement, recorded in June, 1931, with the defendant Robert C. Gillis, whereby the association transferred to Gillis all of the property described in the trust indenture, that is, all of the real and personal property of the association with certain exceptions and reservations which comprised the portions of the property used or to be used for institutional purposes and school sites, as well as the parcels leased for 99-year terms, reserving also equipment necessary for the maintenance and operation of its buildings and grounds, certain cash reserves, and the right to conduct the educational and institutional activities of the association. Gillis agreed to pay to the association $250,000 in sums of $25,000 per annum, payable in monthly installments. Gillis was also obligated to pay to the association twenty-five per cent of the net profits derived from the sales of lots from the tracts, the monthly installments to apply as a credit against such payments. Gillis agreed to discharge all the bonded and other indebtedness against the property, including the $3,500,000 bond issue, and all taxes, assessments and other encumbrances, which, together with expenses of subdivision and commissions, except advertising and sales expenses, were allowed as a deduction against the amounts realized on sales. The plaintiffs allege that the property conveyed by said agreement had a value of $9,000,000. On April 30, 1928, Gillis assigned the agreement and property rights conveyed thereby to the defendant Pacific Land Corporation, Ltd., in exchange for the capital stock of that corporation.

On December 29, 1930, the defendant California Trust Company, pursuant to the terms of the trust indenture, sold to the state of California for the sum of $1,000,000, 3,333 feet of beach land reserved to the Pacific Palisades Association in the agreement with Gillis. It is alleged that

Gillis obtained the benefit of the purchase price of this frontage under his contracts as well as the benefit of balances owing on sales made on March 15, 1927, to Los Angeles Mountain Park Company of 750 acres for the sum of $1,200,000, and of the Bundy Bath House on August 18, 1927, to Will Rogers for $105,000, and a sale of another tract of 1420 feet of ocean front to Santa Monica Land and Water Company on April 4, 1927, for $285,000 and later also sold to Will Rogers. Shortly after the transfer to Gillis on August 4, 1928, Gillis sold to Rogers for $214,872 an additional 306 feet of ocean front, including the so-called Lighthouse, a bathing resort originally, so it is stated, intended for use as part of the development of tract 9300. There was also sold to Rogers another 100 feet adjacent to the Lighthouse for the sum of $80,000. On December 29, 1930, Gillis' *alter ego,* Pacific Land Corporation, entered into a contract for the sale of 2,411 feet of ocean front to the county of Los Angeles for the sum of $723,500. It is alleged that the sums realized on these sales and of other sales of lots to lessees in tract 9300 would have discharged in full the $3,500,000 bonded indebtedness. It is also shown by the complaint that the principal of said bond issue has in fact been discharged to the extent of $2,204,500.

The foregoing facts, together with many conclusions of the plaintiffs respecting the legal effect thereof, are set forth in four purported causes of action in the first amended complaint. The plaintiffs allege that a trust was created in favor of the plaintiffs and those they represent as the beneficial owners of the property acquired by the defendant Pacific Palisades Association; that the defendants have repudiated the trust; and that the transfer to Gillis was a violation of the trust and a fraud upon the plaintiffs. They seek a declaration to the foregoing effect, an accounting, and the appointment of a new trustee or corporation to be organized and known as "Tract 9300 Association" in which the owners and lessees of lots in said tract will be entitled to membership and to which the alleged trust estate shall be set over and by which it shall be administered under the direction of the court, and for judgment against any of the defendants who might be found chargeable with the receipt of any part of such alleged trust estate.

The defendants' demurrer was interposed on general and special grounds and was sustained by the court without leave to amend. Subsequently the plaintiffs on notice applied for permission to make certain amendments to the first amended complaint, which was refused by the court. By such amendment it was sought to show that the persons who became trustees of Pacific Palisades Association were the former trustees of Huntington Beach Methodist Assembly, which thereafter transacted no business; that the defendant Pacific Palisades Association conducted and continued to operate and maintain a Chautauqua assembly on a portion of said tract 9300; and other allegations which it is unnecessary to note specifically.

■ The plaintiffs were not entitled to have their motion granted as a matter of right. The granting or refusal thereof was a matter largely in the discretion of the court. A further review of this ruling is not necessary inasmuch as the allegations contained in the amendments sought to be made would not compel or justify a different conclusion on this appeal.

The question presented is whether the plaintiffs under any view of the facts disclosed have stated or can state a cause of action for relief as against the defendants. Our conclusion that the plaintiffs have not done so and cannot do so finds support without consideration of the application of the statute of frauds, the statute of limitations or the doctrine of laches, or of the question whether the complaint was defective as to form or parties.

The theory of the plaintiffs is that the payment of the $275,000 by the original holders of founders' certificates and all moneys subsequently paid by persons who became lessees or owners of lots in tract 9300 constituted a transfer of the legal title to such funds only, and that the beneficial ownership thereof was retained or separated from the legal title so as to constitute the lessees the beneficial owners in legal contemplation of the corporate assets of Pacific Palisades Association. Unless such a trust was created by that or some other means, the plaintiffs cannot pursue the present remedy for any alleged violation of their duty or abuse of their power by the defendants. The duty in such event is, by section 651c of the Civil Code, cast upon the attorney-general.

The outcome under the theory that an express trust was created depends upon whether there was an intention on the part of the original holders of founders' certificates and the lessees to transfer and of the Pacific Palisades Association to receive only the bare legal title to the funds paid to the latter, or its predecessor Huntington Beach Methodist Assembly, and to create a beneficial or equitable estate therein in favor of the lessees.

In the first place the lot owners and lessees had no active part in the creation of the corporate existence of the defendant Pacific Palisades Association. The corporation was organized without capital stock by the former trustees of Huntington Beach Methodist Assembly, and the trustees, governing as a board, constitute its only members. The plaintiffs therefore are not suing and cannot sue as stockholders or members of the corporation. Therefore whether an express trust was in fact created depends on whether an intention to create such a trust was expressed in the instruments of transfer involved. (*Burling* v. *Newlands,* 112 Cal. 476, 494 [44 Pac. 810].)

Assuming, without deciding, that an express trust may have been created at the time in question for the objects and purposes stated by the plaintiffs, pertinent facts alleged and the instruments and documents pleaded and relied upon by the plaintiffs show not only an absence of any such intention, but, on the contrary, affirmatively indicate that an express trust for any purpose, with the plaintiffs as beneficial owners of the property, was not expressed or intended. It may be said that the memorial in which, under the facts pleaded, such intention should appear, is the instrument by which such funds were transferred by the original holders of founders' certificates and by the lessees. The lease in use, the form of which appeared in the Founders' Hand Book issued to the holders of founders' certificates, is not complicated or misleading. It provides that the lessor lets the described lot of land to the lessee in consideration of the "payments, rents, covenants and agreements" stated therein for a renewable 99-year term. As hereinbefore noted, the only other rights and interest transferred to the lessee were the right to attend the religious and educational meetings conducted under the auspices of the association and the right to receive

a deed for the property upon the payment of an additional sum of $10, in the event the lessor should decide to discontinue the work for which it was incorporated and sell and dispose of its holdings in the tract. Clearly an express trust is not created by the provisions of this instrument. The plaintiffs also rely upon the declarations and representations contained in the founders' certificate or receipt given in exchange for the initial $1,000 paid therefor by each of the 275 holders. This certificate stated that the corporation, Pacific Palisades Association, is to be formed for the purpose of founding on the 1,068-acre tract a religious and educational center similar to that at Lake Chautauqua, New York; that the land is being acquired under the authority of the Southern California Conference of the Methodist Episcopal Church. It outlined the plan to lease lots in the tract and the general terms of the lease, and stated how and when the holder might make his selection of a lot. It contained the provision hereinbefore noted that if a selection was not made within a year, the holder was entitled to the return of his money with interest. This is plain negation of any interest to create the trust alleged. The certificate or receipt represented an investment of $1,000, which could be surrendered for a lease on the terms represented (*Pacific Palisades Assn.* v. *Menninger,* 219 Cal. 257 [26 Pac. (2d) 303]), or for repayment of the amount with interest.

Other documents are relied upon by the plaintiffs to show the intent to create an express trust as stated. Assuming these to be pertinent for the purpose, they, too, negative the existence of any such intent. There was issued by the association a founder's handbook, in which the purposes and objects of the association were enlarged upon, especially as to its social, intellectual and spiritual aims, the beauty of the surroundings, and high standards available to all residents and visitors, the "priceless values" of which "go with the lots". Some of the institutional features to be inaugurated, and the development, financial and appraisal plans and work were described. The form of lease was set out in full and, in addition, a summary of its salient features with a statement of the value to the prospective lessee of the permanency of the educational features which might be insured by the investment. Provi-

sions in the lease which permitted cancellation thereof by the association on repayment, with interest, of the sum received as the cash payment, it was explained, were included for the purpose of insuring to any lessee not in sympathy with the development "a fair profit on his investment". In this summary and explanation there was specially noted the provision of the lease that a deed to the leased premises was to pass to the leaseholder in the event the institution discontinued its educational activities. The purpose of this was stated to be that, although the institution was designed to have perpetual existence, the provision was included to protect fully the rights of all in the event of its unexpected discontinuance. There is nothing in the foregoing that does not distinctly define the rights of the lessees, and the fact clearly appears that the benefits to be derived by the lessees in addition to the interest transferred to them were the benefits specifically described, which were purely incidental to the development of the objects and purposes of the association, and the statement thereof did not constitute the lessees the beneficial owners of the property to be developed as an educational and religious institution for their "benefit".

Further negation, if any further be needed, of any existing rights of ownership or control by the lessees in the property reserved for institutional or other purposes is contained in the articles of incorporation of the Pacific Palisades Association, which the plaintiffs also rely upon and incorporate as an exhibit. The articles provided that the members of the board of trustees shall be nominated by the Southern California Conference of the Methodist Episcopal Church. The board of trustees was given power to fill vacancies by election from the nominees of the conference. The purposes, objects and powers of the association were as permitted by sections 649 et seq. of the Civil Code. It was declared in the articles that the corporation had been promoted by the conference for the purposes expressed therein and that all by-laws and ordinances necessary and proper in the exercise of the powers and to advance the interests of the corporation were to be subject to the consent and approval of the conference. They also provided that the membership of the corporation consisted of the signers of the articles and the members of the

board of trustees. Dividends were not to be declared but profits were required to be devoted exclusively to the purposes of the corporation. The following specific provision appears: "Should the Board of Trustees at any time deem it wise to discontinue this institution, it may do so by and with the consent of said Conference. In such case the Board of Trustees shall dispose of the property and assets of the corporation in the manner directed by said Conference, or pay over to said Conference, the net proceeds of its assets, after payment of all its obligations. The Board of Trustees shall make an annual report of the business and condition of the corporation to said Conference." The articles also provided that the board of trustees might nominate an advisory committee, the members thereof to be elected by the conference, to consult with the board on the business and work of the corporation. The framework of the organization shows that it was intended to receive, buy, hold and sell both the legal title and the beneficial interest in real and personal property, but, if this is not so, that the beneficial interest was to be held only by the Southern California Conference of the Methodist Episcopal Church.

The plaintiffs advance the alternative claim that the facts alleged are sufficient to constitute a cause of action on the theory either that a resulting trust or a constructive trust in the property exists. The claim is not tenable on either theory. There is nothing in the facts alleged to show that the land purchased by the association was to be or was paid for with money owned by the lessees. The statement of the project and the terms of the pertinent documents show conclusively that the certificate holders and lessees paid money in return for an interest which was conveyed to them. The consideration was for the interest or investment which was received. The money then became the property of the association and was dealt with as its own. It is not necessary to note all the difficulties in an attempt to support the theory of a resulting trust. It is enough to note that the facts alleged do not give rise to the natural presumption that the certificate holders or lessees were the real owners of the property and that title was taken in the name of the corporation merely as a matter of convenience and arrangement between them. Where this natural presumption is lacking a trust does not result.

54

(*Woodside* v. *Hewel,* 109 Cal. 481, 485 [42 Pac. 152];
*Lezinsky* v. *Mason Malt W. D. Co.,* 185 Cal. 240, 247, 251
[196 Pac. 884].) The plaintiffs rely on the case of *Leviston* v. *Tonningsen,* 212 Cal. 656 [299 Pac. 724]. But in
that case the fact that title to the property in question was
deeded to one without consideration merely to facilitate
the redemption of the property was held to support the
finding and conclusion that the title was held subject to a
voluntary resulting trust.

A constructive trust arises by virtue of an act committed by one who wrongfully detains property or who
obtains it by fraud, violation of a trust, or other wrongful
act, and the holder thereupon is a trustee thereof for the
true owner. (Secs. 2217, 2223, 2224, Civ. Code.) In this
respect the plaintiffs allege and contend that the acts of
the defendants Pacific Palisades Association and Robert C.
Gillis, hereinbefore outlined, constituted a fraud on the
plaintiffs, and that this wrong or fraud and the repudiation
of the alleged trust relationship have given rise to a constructive trust. It has been seen that the funds came into
the possession of the defendant, Pacific Palisades Association, in the first instance, as the owner of both the legal
and beneficial title thereto, i. e., without being impressed
with any trust in favor of the lessees as the beneficial
owners thereof. Any dealings in relation to that property
thereafter were, therefore, on behalf of the corporation,
and, whether conformable to the powers and duties of the
board of trustees of the association, or of the other defendants, they were not a fraud upon any right of the lessees
and not a violation of any trust as to them. A constructive
trust cannot, therefore, be said to have arisen by virtue of
such acts. Nor can it be said that a constructive trust
arose by virtue of the alleged repudiation of a trust which
never existed.

Thus the cause of the plaintiffs in this action must
stand or fall on their claim that an express trust was created. This claim they have failed to establish. The facts
on the other hand are conclusive that their standing in the
transactions with the defendant, Pacific Palisades Association, is that of purchasers of an interest in property which
they have received. Inasmuch as the plaintiffs have failed
to state a cause of action sufficient to impress a trust on the

funds or the property on any theory, an accounting is not required.

■ The plaintiffs have also appealed from an order taxing costs on the ground that the allowance of an item of some $169 representing the cost to the defendants of taking the depositions of certain of the plaintiffs was erroneous. The record shows that said plaintiffs were duly examined before a notary public, their depositions were transcribed but were not signed or used for the reason that the cause proceeded no further than the ruling on the demurrer. The plaintiffs argue that a deposition is not a deposition until it has been signed, and directed to the clerk of the court as provided by section 2032 of the Code of Civil Procedure. Section 2021 of the same code gives the right to take the deposition of an adverse party at any time after service of summons or the appearance of the defendant. Even though no issue of fact has been joined and the depositions are never used, the prevailing party is entitled to costs thereon. (*California etc. Co.* v. *Schiappa-Pietra,* 151 Cal. 732, 745 [91 Pac. 593] ; *Lindy* v. *McChesney,* 141 Cal. 351, 353 [74 Pac. 1034].) The question whether the expenditure was necessary or was incurred in good faith was primarily for the trial court. (*Murphy* v. *F. D. Cornell Co.,* 110 Cal. App. 452, 455 [294 Pac. 490].) No showing of an abuse of the court's discretion is presented. The foregoing decisions and the decisions relied upon by the plaintiffs do not presuppose necessarily that the depositions taken had reached the finished state insisted upon before costs could be taxed in respect to them.

The judgment and the order taxing costs are, and each is, affirmed.

Preston, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.